The next matter, No. 23-1938, United States v. Kelechi Collins Umeh. At this time, would counsel for the appellant please introduce himself on the record to begin. May it please the Court, Houston Goddard on behalf of Kelechi Umeh. Judge Montecalvo, could I please reserve two minutes for rebuttal? You may have two minutes. Thank you. Your Honors, this case centers on a change of plea hearing that fell far short of what the law demands. There are 15 advisements the district court must give any defendant before he or she pleads guilty. These advisements are meant to ensure the plea is knowing and voluntary. Several of these advisements, Mr. Lockhart and I will disagree on whether the district court did its job, but what's remarkable about this case is that for six of those advisements, government agrees, or at least does not contest, the district court failed to make those advisements. That's six of the 15 advisements, a full 40% of the requirements under Rule 11b-1, the district court did not accomplish here. And these were not minor and consequential advisements. Let's focus in on the appeal, the issue of the appeal waiver. I agree with you that the judge at the hearing says nothing about whether there's an appeal waiver here, and we know there was at least a written appeal waiver, correct?  This puts us into the realm of Teeter. Do you agree with that? Well, Your Honor, I think it's a little slightly more complicated than that, if you would allow me to explain. Teeter is sort of the general framework of the validity of appeal waivers in this circuit. There are two tweaks to that. One was with this court's decision in Borrero Acevedo, on which the government relies, which introduced some tension, as this court has recognized, in Villarros Rosario. I don't think the court needs to go down that road, because the second tweak was in a line of cases, starting with Miranda or Santiago Miranda, saying that when the validity of the plea is at question, that alone, if the court finds the plea is invalid, that does away with the appeal. Is that right, or is it only if it's knowing and voluntary? I mean, those are different things. You can have a Rule 11 violation, still a knowing plea. Now, you may say I wouldn't have pled if I had been told something, but that doesn't make it a not knowing and voluntary plea, does it, just because Rule 11 wasn't complied with? Judge, my argument is not, I didn't mean to make the argument that a Rule 11 violation, you know, the court's, let me back up. I'm only arguing that if the plea is not knowing and voluntary, then the plea is not valid and the appeal waiver is gone. And are you arguing this plea was not knowing and voluntary? Yes, Your Honor. On what basis, as opposed to just he wasn't told something? I mean, what's the basis to say it was not knowing and voluntary? I mean, are those, do Rule 11 and knowing and voluntary, are they the same thing? If a Rule 11 violation is established and it is found to be plain error, meaning that there is a reasonable probability that the defendant would not have entered the plea but for the violation, then that plea is unknowing and involuntary.  So here, if the plea is unknowing and involuntary, then the appeal waiver is gone. And that would be Mr. May's position on the appeal waiver. So let's assume I disagree with you. Okay. And that I think, at least in terms of the appeal waiver, that we're sort of within this teeter universe. Okay. What is your best argument that the record here reflects that the defendant didn't understand he had waived his rights to appeal? Well, the argument is there is absolutely no mention of the appeal waiver at the Rule 11 hearing. And while Teeter does say that the court may look to the rest of the record, there's nothing else in the rest of the record. Of course, it's there in the plea agreement, but that's the case in any situation where we're talking about the appeal waiver. But there's also a sign acknowledged by the lawyer saying, I've talked to this guy, we've read the plea waiver, and he understands it. Absolutely. As there is in every plea agreement. Well, not every one. I mean, but you can put that in there if you choose to, and they did. And so why is that different than the case that Judge Lopez wrote where we applied the plea waiver because we said these facts show that, even though there wasn't a statement by the judge, why is it different than that case? Well, the situation in Viotas-Rosario was that they looked to the sentencing hearing where it was discussed, the appeal waiver was discussed. So the defendant at that point could have said, well, hold on a second, I didn't know about this appeal waiver. What are you guys talking about? And that didn't happen. So the court in Viotas-Rosario took that as a sign that the defendant had been aware of the appeal waiver, and that makes sense. Here the case is the opposite. Not only did the court actually told Mr. Rime at sentencing that he could appeal. So there's nothing in the record to suggest that Mr. Rime was ever discussed in court, which is separate and distinct from Viotas-Rosario. So that's the distinction there. Returning to the Rule 11 errors at the plea hearing, as I was saying, these are not minor unimportant errors. They were just focusing on the ones the government has conceded here. The district court did not advise Mr. Rime of the sentencing factors it would be considering in fashioning a sentence. That's also not in the plea agreement. That's something that was never discussed with Mr. Rime. He didn't know what his sentence would be based on. Well, the government said, didn't it, what it would need to prove, because Judge Young does the thing where he makes the government say what they would try to prove, right? Sure, and that would establish the elements of the crime. It would establish the sentencing enhancements, which would set the guidelines. And the range. And the judge said that even though actually I think maybe he could sentence higher than that, he's self-limited to whatever that number is, right? Certainly. So to clarify, Mr. Rime was advised of what his guidelines would be. That was the starting point. And that that would be the stat max as the court understood what it would do. As the court understood. It was incorrect. The stat max was 30 years. He was told it was eight years, but that was. Which cuts in his favor. Well, yes and no. It cuts in his favor in terms of what his sentence would be. In terms of understanding the import of his plea, he did not know he was pleading guilty to a crime that he could go to prison for 30 years on. He was not told that by the district court. But the district court told him he wasn't going to go to jail for 30 years. Sure. Say, for instance, Judge Young had to recuse himself or fell ill and the case was reassigned after Mr. Rime had pled. No other judge would follow that. No other judge in the country would follow that. And Mr. Rime would be facing the full 30 years. But in terms of the sentence he was facing, even in front of Judge Young, he knew the guidelines. That is the starting point. As we all know, that's not the ending point. The court is required to take the guidelines into consideration, but the sentence is fashioned based on the 3553A factors. And Mr. Rime was never told about the 3553A factors by the district court. And as we know, Mr. Rime's focus here was. . . And he got a downward variance, right? He did. So how does all that play when we think about, assuming we're using plain error and third prong, and we're saying, well, how do we think about the fact that all of this worked out relatively to his advantage? Is that part of what we think about? Well, Mr. Rime, the record reflects that Mr. Rime believed that if he got a time-served sentence, he would be able to stay in this country with his family. Mr. Rime, at the time he was charged, at the time he appeared for his Rule 11 hearing, was a green card holder who was engaged to an American citizen. Did Judge Young give the deportation warning? He told him that by pleading to a crime, it may have immigration consequences, including deportation. He did. And do you think that's sufficient? I do, yes, for the Rule 11 purposes. But the point here is focusing on what Mr. Ume was aiming for. The record shows that he thought he could stay in this country if he got a time-served sentence, and only if he got a time-served sentence. He didn't know that Judge Young would be taking into consideration his history and characteristics. Mr. Ume is a man who, as pre-sentence report shows, had a history of selling drugs, a history of violent crimes with firearms. If he had known that Judge Young would be sentencing him, not just on this nonviolent crime where he played a fairly low-level role, but be looking at his entire history and characteristics, Mr. Ume would have known that he had no shot at getting that time-served sentence, that he would go to prison and he would be deported. But he did not know that, and that factored into his decision to take this plea that guaranteed his removal. Counsel, can you just help me with one piece of chronology?  So after the entry of plea, but before sentencing, he went through the pre-sentence investigation process? Correct, Your Honor. Presumably had access to the information in the pre-sentence report? Correct, Your Honor. Did he seek to withdraw his plea? He did not, Your Honor. Thank you. Thank you, Counsel. At this time, would Counsel for the Government please introduce himself on the record to begin? Good morning. Donald Blockhart for the Government, and may it please the Court. I'd like to start with the appeal waiver question, and in particular drill down a little bit on this Court's decision in Barrero Acevedo, because that's a case in which the defendant wished to bring the underlying claim that his guilty plea was not knowing and voluntary. And the appeal waiver the Court held precluded that claim, because in that case the defendant was seeking to avoid the appeal waiver only on the basis that the district court hadn't covered it at the earlier Rule 11 hearing. And this Court has subsequently confirmed in the Murillo case, 910F3-1, that the law in this circuit in the wake of Barrero Acevedo is that where the only challenge to an appeal waiver is that the judge failed to cover it at the early Rule 11 proceeding, and there was no objection on that basis in the district court, then the defendant has a burden under the plain error prong, prong 3, of showing effectively that, number one, he didn't know about the waiver clause, and number two, had he known about it, he wouldn't have pled guilty. He has to show a reasonable probability that the judge's omission essentially caused him to plead guilty. He would have otherwise gone to trial. The defendant in Barrero Acevedo couldn't satisfy that burden for almost identical factual reasons. This defendant can't satisfy it either, because we have a plea agreement in which the defendant and his attorney are affirmatively telling the Court that the defendant's read the agreement, he's discussed it with his attorney, and he understands it. The defendant and his attorney are repeating that representation again at the Rule 11 proceeding, and there's nothing in the record to suggest the defendant didn't actually know about the appeal waiver, which is why my brother has not even attempted to satisfy his prong 3 burden. What he has suggested instead is two things. Number one, that somehow Barrero Acevedo is only about Rule 11 and not about the teeter-prong 2 inquiry, and if the Court looks carefully at Barrero Acevedo and at the Murillo case, which I've just cited, you'll see that, no, clearly Barrero Acevedo is both a prong 2 teeter case and a Rule 11 B1M case, and it sets the controlling standard in this circuit. The defendant also relies on criticisms of Barrero Acevedo that were made in the Bellotus Rosario case, but, of course, Barrero Acevedo is a binding precedent under the law of the circuit doctrine. Bellotus Rosario didn't purport to overrule it, nor could it have, and, indeed, as Judge Aframe has pointed out, the panel in that case went on to look at the issue strictly through the second prong of teeter, and nonetheless came out the same way anyway, because... Mr. Lockhart, can you help me with this? So let's say the waiver applies, and so we're at now there's still a miscarriage of justice aspect to the teeter considerations. I don't know if you say the waiver applies, but miscarriage of justice is part of the analysis, and then you have plain error, because he didn't object to anything that happened at this change of plea hearing. So what is the difference between those standards? I mean, they're saying don't apply the waiver, but apply plain error. You're saying apply the waiver, which at least has a miscarriage of justice piece. How do we think about that? So the teeter prong 3 standard has a miscarriage of justice exception baked into it. Prong 4 of the plain error standard is effectively a miscarriage of justice inquiry as well. The important thing here is that the defendant in this case has not invoked either the prong 3 teeter miscarriage of justice exception, or made any sort of prong 4 argument. There's no reason to think that the two should be treated differently. But importantly, what Barreras Acevedo says is that where a defendant is only relying on teeter prong 2, is not making a teeter prong 3 miscarriage of justice claim or a teeter prong 1 claim to the effect that the appeal waiver clause was not clear, that that defendant, in that case, the prong 2 teeter inquiry and the rule 11B1N inquiry effectively merge. And we simply ask the prong 3 plain error question, is there a reasonable probability that this defendant would have pled guilty if the judge had formally discussed the appeal waiver at the rule 11? And that is a test that my brother does not try to satisfy in the briefing. Counsel, you don't rely solely on that. What if we set aside Barrera for now? Yeah, you can set aside the appeal waiver completely and drive straight to the merits and reach the exact same bottom line result, because in this case, the underlying, the key underlying claim here, I thought, was that the judge failed to adequately discuss the defendant's right to a jury trial on the elements of the offense. And if you look at pages 8. I'm sorry. The guidelines argument in the brief is sort of this combined, you know, all of the rest of the alleged errors, as opposed to broken out as we should be focusing on that. Do I remember the brief correctly? Right. So the defense opening brief lists some 12 other rule 11 violations without making any attempt to satisfy prong 3 of the plain error test, as it were, but suggests now in the reply brief that if you sort of look at these things collectively, they should cause you to think that in their totality, the omissions would have caused the defendant. So this is a Zanino problem from your point of view with respect to the guidelines issue? Yes. So there is a waiver question there, a la Zanino. But by the defendant, it's maybe more accurately called a Paban waiver situation, because the defendant hasn't tried to satisfy the plain error standard with respect to any of these 12 additional claims. Hasn't shown that it's plain or obvious that the judge didn't adequately cover certain things, and certainly hasn't satisfied prong 3. I mean, one of the overarching themes of our response brief is to point out that in virtually every case where the defense claims that Judge Young omitted some particular piece of information, that information was covered either at the initial appearance, in the defendant's plea agreement, sometimes in both places, in the PSR, for example, the statutory maximum penalty was covered in all three of those places. As Judge Aframe has pointed out, the defendant ultimately received a sentence that was well below the bottom of the guideline sentencing range and nowhere approaching 30 years. Likewise, we agreed to recommend a two-year term of supervised release rather than the five-year max. And so the defendant was never realistically facing even a five-year supervised release term, let alone a 30-year statutory maximum penalty. The argument he seems to make is, well, I thought if I got any jail time, I was going to be deported, and I didn't have a good understanding that I was likely to get jail time. Other than the defense lawyer saying that today, or in a brief maybe, where is that anywhere? The argument is completely refuted by the record, because the government committed to recommending a bottom-of-the-range sentence of 57 months. Now, certainly the defendant pressed for an even lower sentence and got it. But the idea that the defendant stood some chance getting jail time. What did the defendant ask for at sentencing? Did he ask for time served? I believe that's right, but I actually can't in the moment remember precisely. But as to the immigration consequences, the defense concedes that Judge Young accurately covered that subject at the Rule 11 hearing. There's a suggestion in the briefing that the defendant somehow thought that during his term of supervised release, he couldn't be deported, and therefore he wanted a longer term of supervised release. But that doesn't make any sense, because he specifically negotiated with us for a two-year term rather than the five-year max. So if he really thought that he could prolong his stay in the country by being on supervised release, then logically he would have asked us to recommend five years instead of two. So unless the Court has further questions, we'll rest on the brief. Thank you. Hello again. Houston Goddard on behalf of Kelechi Yume. There are several things I'd like to respond to there, starting with the appeal waiver. I just wanted to draw this Court's attention to a case called Aaron Pacheco from the Circuit 564 F. 3rd 55. This is on the issue of the miscarriage of justice, which the Court raised. Even if Borrero Acevedo is followed, this Court has made clear that the miscarriage of justice prong of Teeter remains. And in this case, I've cited Cotter on Pacheco makes it clear that the Court can invoke that miscarriage of justice even if the issue has not been briefed. But again, the core issue here is that Mr. Yume's challenge is to the validity of his plea, whether his plea was known or voluntary. This Court recently and stately at 43 F. 4th 9 said that if a plea is involuntary, then by following rudimentary logic, the appeal waiver is invalid as well. So that rudimentary logic is what Mr. Yume is relying on in terms of the validity of the appeal waiver. Turning to the merits, Mr. Yume has briefed in his opening brief and emphasized in the reply and here at oral argument the cumulative effect of these many, many violations. I do want to touch on the jury trial right, which is not something we've discussed too much here this morning. I know I don't have much time left, but I want to stress that the Supreme Court in Boykin set out that there are three core constitutional rights in our criminal defense system. One is the right of confrontation, one is the right against self-incrimination, and one is the right to a jury trial. Three rights that are at the heart of our criminal justice system, none of which can be waived on a silent record. Here the record is silent. There was no mention of jury trial right. Well, that's not true, right? I mean, the jury trial right was mentioned multiple times. You're saying it wasn't mentioned clearly enough because there's some overlap between what Judge Young is saying about how he does sentencing. But this is not a case where the jury trial right wasn't mentioned, that that's just not the record, right? Your Honor, my position would be that the record does not state. It would not be asking much for the district court to say, Mr. Roommate, you have a right. It could have been better, but he had a lawyer there, and the whole point of this entire plain error situation is things were said, it could have been clearer, there's a lawyer sitting there, that lawyer doesn't say anything, the client has the ability to consult with the lawyer, this is not the absence of any discussion of the jury trial right. You're just telling us it's not good enough. What I'm attempting to say, Your Honor, is that the court did not inform Mr. Roommate that he had a jury trial right on the crime charged. And under the second prong of plain error analysis, in this case, the question is not clear and obvious does not mean does the judge get in the ballpark. Clear and obvious was the law clear and obvious, and the law could not be clear here. This is not a situation where the judge may engage in fact finding, and now this court grants great deference, and only if there's anything in the record to support it will go with the district court. That's not the situation here. We're not talking about fact finding. We're talking about the core constitutional right. Was Mr. Roommate advised of it? But this is where the problem is that he doesn't object, he doesn't move to withdraw his plea, and now he's unhappy, and he's here looking for relief despite not taking advantage of any of those opportunities. And so the deck is heavily stacked against him as it should be, and I guess what I'm not understanding is, it's one thing if there was a total misfire where the jury trial right wasn't discussed at all, but this is a much narrower question, whether the judge, whether it was clear enough that everybody there sort of understood it. I think my response there, Your Honor, would be that we're putting the burden on Mr. Roommate to sort of discern through these muddy waters what maybe the judge is getting at. This is the core constitutional right, and it is the district court's obligation to make that clear to Mr. Roommate, and it did not do so. Thank you. Thank you, counsel. That concludes argument in this case.